UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00784-GNS

SHRIKANTH NEKKANTI                                                    PLAINTIFF

v.

V-SOFT CONSULTING GROUP, INC.                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 8).  The matter is
ripe for adjudication.  For the reasons provided below, the motion is **GRANTED IN PART** and
**DENIED IN PART**.

## I.      BACKGROUND

Plaintiff Shrikanth Nekkanti ("Nekkanti") is a resident of Aurora, Illinois, and was
formerly employed by the information technology employee placement firm, Cognizant.  (Compl.
¶¶ 1, 11).   Nekkanti alleges Defendant V-Soft Consulting Group ("V-Soft") is a business
headquartered in Louisville, Kentucky, which also places skilled information technology
employees with firms in need of such workers.  Firms pay V-Soft directly for the employees'
services, and V-Soft in turn pays the employees a percentage of this payment.  (Compl. ¶¶ 2, 6-7).

Saisivakumar Yerramneni ("Yerramneni") was employed by V-Soft when he was placed
with health insurance firm, Anthem, on a project under the supervision of Nekkanti in Atlanta,
Georgia.  (Compl. ¶¶ 8-11).  In August 2018, Yerramneni allegedly approached Nekkanti to ask
him to sign an affidavit describing Yerramneni's job responsibilities so that he could give it to V-

Soft's immigration department for filing with the United States Citizenship and Immigration Services ("USCIS") to extend Yerramneni's H1B visa.  (Compl. ¶¶ 11-13).

Nekkanti completed and signed the affidavit, and Yerramneni provided it to V-Soft. (Compl. ¶¶ 15-16).  Nekkanti alleges V-Soft then wrote an entirely different affidavit and placed an Anthem logo at the top of each page.  (Compl. ¶ 17).  Nekkanti alleges V-Soft used his signature from the affidavit it acquired from Yerramneni to forge his signature on this second affidavit. (Compl. ¶ 18).  V-Soft then allegedly filed this second affidavit with USCIS in its application to extend Yerramneni's H1B visa.  (Compl. ¶ 19).

Nekkanti alleges V-Soft's filing of this affidavit triggered an audit of Anthem, who then contacted Cognizant.  (Compl. ¶¶ 20-22).  Cognizant subsequently terminated Nekkanti because it believed he forged Anthem's letterhead onto the affidavit.  (Compl. ¶¶ 23-24).  When presented with yet another version of the incriminating document with the Anthem logo, Nekkanti stated he did not prepare either version of the affidavit with Anthem's logo.  (Compl. ¶ 26).

Nekkanti first asserts three claims of interference with business advantage regarding contracts with Cognizant, Anthem, and multiple other unnamed businesses.  (Compl. ¶¶ 31, 35, 41).  Next, Nekkanti asserts a claim of forgery against V-Soft, arguing it intentionally deceived USCIS by affixing his signature to an affidavit containing Anthem's logo, which resulted in lost income.  (Compl. ¶¶ 46-48).  Finally, Nekkanti asserts a claim for negligent supervision for failing to exercise ordinary care in preventing his signature from being forged by V-Soft's employees. (Compl. ¶ 51).

V-Soft has moved to dismiss Nekkanti's claims under Rule 12(b)(6).  (Def.'s Mot. Dismiss 1, DN 8).  Regarding his tortious interference claims, V-Soft argues Nekkanti failed to plead any nonconclusory facts supporting the allegation that it knew of the contract or that it intended to

cause breach. (Def.'s Mot. Dismiss 4-6). Concerning Nekkanti's forgery claim, V-Soft contends his claims must fail because he is not within the class of people protected by Kentucky's forgery statute. (Def.'s Mot. Dismiss 6-7). Finally, V-Soft urges the Court to dismiss Nekkanti's negligent supervision claim because he fails to allege in his Complaint that V-Soft knew or should have known there was a risk any of its employees would forge his signature. (Def.'s Mot. Dismiss 8). In his response, Nekkanti repeatedly refers to the Kentucky Civil Rules to defend his claims because he is only required to "simply submit a short and plain statement of claims showing that he . . . is entitled to relief." (Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 9 [hereinafter Pl.'s Resp.]).

## II.  <u>JURISDICTION</u>

This Court has jurisdiction because there is complete diversity between the parties and the value of the asserted claims exceeds $75,000. 28 U.S.C. § 1332(a)(1).

## III.  <u>STANDARD OF REVIEW</u>

First, the parties disagree regarding the applicable standard of review in this case. Plaintiff repeatedly refers to Kentucky's Civil Rules, while Defendant relies on the Federal Rules of Civil Procedure. (Pl.'s Resp. 1, 3, 5; Def.'s Mot. Dismiss 1). Federal courts sitting in diversity apply state law to substantive "rules of decision" under which claims are adjudicated but apply federal law to procedural issues governing only "the manner and the means" by which litigant's rights are enforced. *See Shady Grove Orthopedic Assocs., P.A. v. AllState Ins. Co.*, 559 U.S. 393, 406-07 (2010) (citation omitted). Accordingly, the Court will apply Kentucky substantive law to Nekkanti's claims for interference with business advantage, forgery, and negligent supervision, but will apply federal standards pertaining to procedure. *See id*.

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV.   DISCUSSION

### A.   Tortious Interference with Business Advantage

Nekkanti asserts three claims for tortious interference with business advantage, claiming V-Soft interfered with his contracts with Cognizant, Anthem, and multiple other business entities. (Compl. ¶¶ 31, 35, 41). Under Kentucky law, for Nekkanti to recover on these claims, he must plead facts demonstrating: "(1) the existence of a valid business relationship or expectancy; (2) that [V-Soft was] aware of this relationship or expectancy; (3) that [V-Soft] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Burkhead & Scott, Inc. v. City of Hopkinsville*, 666 F. App'x 407, 408 (6th Cir. 2016) (quoting *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. App. 2012)). "Tortious interference claims turn on the defendant's motive, requiring the plaintiff to 'show malice or some significantly wrongful conduct.'" *Id.* (quoting *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988)).

In light of this, Nekkanti's claims fail. To start, Nekkanti's Complaint alleges V-Soft acted intentionally with ill will or malice but fails to provide any specific, nonconclusory facts from which a jury could find it acted either with malice or ill will. (Compl. ¶¶ 31-32, 37-38, 42-43). Nekkanti similarly fails to articulate nonconclusory facts regarding an improper motive under the fourth prong. Nekkanti fails the fifth prong regarding causation because his pleadings merely conclude that V-Soft's conduct caused him to breach his contracts, but he fails to specify which provisions or terms of any contract was breached as a result of V-Soft's conduct. Instead of alleging specific facts supporting his claims, Nekkanti instead makes "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted). For this reason, his three claims for tortious interference with business advantage will be dismissed.

**B.    Forgery**

Nekkanti next alleges V-Soft committed forgery when it placed his signature on an affidavit on Anthem's letterhead with the intent of deceiving USCIS. (Compl. ¶¶ 46-47). Forgery is a crime in Kentucky, and of the varieties defined in Kentucky's penal code, Plaintiff's allegations only potentially fit within "forgery in the third degree."[1] KRS 516.010 *et seq*. "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument." KRS 516.040(1). Upon

---

[1] Forgery in the first degree involves making or altering a written instrument that is part of an issue of money, stamps, securities, or other instruments issued by a government, or that is part of an issue of stock, bonds or other instruments representing making an interest in a corporation or other organization. KRS 516.020(1). Forgery in the second degree involves falsely making, completing or altering a written instrument, or coercing another person to do so, that either is or purports to be (a) a deed, will, codicil or similar document affecting a legal right, interest obligation or status; (b) a public record or an instrument required to be filled in or with a public office; or, (c) a written instrument officially issued or created by a public office, employee, or agency. KRS 516.030(1).

review of the pleadings, then, it appears that Nekkanti has stated a claim because he has alleged V-Soft altered his affidavit by copying his signature from the affidavit he provided Yerramneni and pasted it on an entirely different affidavit on Anthem letterhead.  (Compl. ¶¶ 13, 17).  Nekkanti has alleged this act was taken in an effort to deceive USCIS with regard to Yerramneni's H1B visa extension application.  (Compl. ¶¶ 19, 46).

V-Soft contends that forgery is a criminal offense and Nekkanti has neither presented a criminal charge nor asked the Court to find V-Soft "guilty" of forgery.  (Def.'s Mot. Dismiss 7). Nekkanti responds by referring to KRS 466.070, Kentucky's negligence *per se* statute which "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person is within the class of persons the statute intended to be protected."  (Pl.'s Resp. 7 (quoting *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005))).

There are three prerequisites for a party invoking KRS 466.070 to sue for another's violation of a statutorily established standard of care as negligence *per se*:  "[F]irst, the statute in question must be penal in nature or provide no inclusive civil remedy; second the party [must be] within the class of persons the statute is intended to protect; and third, the plaintiff's injury must be of the type that the statute was designed to prevent."  *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014).

In its reply, V-Soft argues that Nekkanti's claim fails because "[t]he statute is intended to protect those being deceived by the falsely made, completed or altered written instrument."  (Pl.'s Reply 4, DN 10).  Thus, V-Soft urges that because Nekkanti alleged V-Soft intended to deceive USCIS, Nekkanti is not in the class of persons intended to be protected by Kentucky's forgery statute.  (Pl.'s Resp. 4-5).

V-Soft's argument that KRS 516.040 protects only those being defrauded or deceived must be rejected in light of several statutory provisions defining "falsely alter," "falsely complete," and "falsely make" with reference to the "maker or drawer" of the forged documents. The statute provides:

> (5) To "falsely alter" a written instrument means to change, without the authority of anyone entitled to grant it, a written instrument, whether it be in complete or incomplete form, by means of erasure, obliteration, deletion, insertion of a new matter, transposition of matter, or in any other manner, so that such instrument in its thus altered form appears or purports to be in all respects an authentic creation or fully authorized by its ostensible *maker or drawer*;

> (6) To "falsely complete" a written instrument means to transform by adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete instrument appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible *maker or drawer*;

> (7) To "falsely make" a written instrument means to make or draw a complete written instrument in its entirety or an incomplete written instrument, which purports to be an authentic creation of its ostensible *maker or drawer*, but which is not either because the ostensible *maker or drawer* is fictitious or because, if real, he did not authorize the making or drawing thereof . . . .

KRS 516.010(5)-(7) (emphasis added). Kentucky's forgery statute thus contemplates the interests of the maker or drawer of a forged document. Moreover, Kentucky courts interpreting the forgery statute in its nascency referred to Blackstone and repeated common law understandings that forgery is "'the fraudulent making, or alteration of a writing to the prejudice of another man's rights.'" *Commonwealth v. Schumacher*, 566 S.W.2d 762, 765-66 (Ky. App. 1978) (citation omitted).

In light of this, Nekkanti may assert a claim invoking KRS 466.070 and seek damages from V-Soft for violating KRS 516.040. This statute is penal in nature and was intended to prevent the insertion or transposition of matters into documents which appear to be authorized by the

documents' ostensible maker or drawer. KRS 516.040; *see Vanhook*, 67 F. Supp. 3d at 817. Moreover, V-Soft's argument that Nekkanti is not within the class of parties protected by the forgery statute must be rejected because the statute's definitions contemplate the interests of a "maker or drawer," and Nekkanti's rights—his employment relationships—were affected as a result of V-Soft's alleged alterations. Put another way, KRS 516.040 not only protects the interests of those who are defrauded by a forged signature as V-Soft asserts, but also those parties whose signatures have been forged and suffered negative consequences as a result. *See Schumacher*, 566 S.W.2d at 766. Accordingly, Nekkanti's forgery claim survives.

### C.     Negligent Supervision

For Nekkanti's claim for negligent supervision to survive, he must allege facts showing that "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citation omitted). "[A]n employer may be held liable for negligent supervision *only* if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (emphasis added) (citing Restatement (Second) of Agency § 213 (1958)).

In this case, Nekkanti's Complaint lacks allegations with respect to the requirement that V-Soft knew or should have known that its employees or any of them were prone to forging documents. While Nekkanti alleged V-Soft had a duty to prevent forgery and breached that duty by failing to prevent forgery, the Court is not bound to accept bare legal conclusions unsupported by factual allegations supporting an inference that V-Soft was aware of such risks in its employees. *See id*. at 517-18. Accordingly, Nekkanti's claim for negligent supervision will be dismissed.

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 8) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to Plaintiff's claims for tortious interference with business advantage and negligent supervision. The motion is **DENIED** as to Plaintiff's forgery claim.

Greg N. Stivers, Chief Judge
United States District Court

July 30, 2019

cc:    counsel of record