UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---:|
| **Shrikanth Nekkanti** | Plaintiff |
| v. | No. 3:18-cv-784-BJB |
| **V-Soft Consulting Group, Inc.** | Defendant |

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

The plaintiff in this tort case filed a summary-judgment motion that implicates the intent of an absent witness. As briefed and argued by the parties, the motion raises two main questions. Does the record indicate that this witness—an IT employee no longer in the country—intended to deceive the government by submitting a manipulated immigration letter? And does the record compel the conclusion that he did so to benefit his employer? If the answers to both could only be yes, then the witness would bear tort liability for damages caused by the forgery, while his employer would in turn bear vicarious liability for its employee's actions.

The plaintiff is another IT employee who worked for another IT company. He signed the letter in question—before it was manipulated—and no one contends he did anything wrong. Yet the forgery, once discovered, caused a contractor to fire the plaintiff from its projects, apparently because his name and signature appeared on the offending document. So the plaintiff sued the alleged forger's employer over the work the plaintiff lost. Now he seeks summary judgment with respect to liability only.

Although that procedural posture is a mouthful, the evidentiary record is easier to swallow. And it is entirely consistent: the only evidence before the Court indicates the employee intended to deceive the authorities and forged the letter in furtherance of his employer's business. To be sure, intent is usually a jury question. But here, the uniform summary judgment record wouldn't be supplemented at trial by any testimony from an absent witness no one expects to hear from. And the question whether that employee intended to further his employer's business—the sole element of vicarious liability in dispute—is a question of law for a judge, not a fact question for the jury.

So a jury in this case would have no basis to reach a decision other than the one the Court issues today: the employee's intent to deceive is not genuinely in dispute based on this record, which also shows that the deception occurred within the scope of employment. Therefore the employer is liable for those actions under straightforward principles of vicarious liability, and the Court grants summary judgment for the plaintiff on the question of liability.

**A.   Employers and Employees**

The plaintiff is Shrikanth Nekkanti. He is an information technology professional.

Nekkanti worked for Global Information Technology, a consulting and outsourcing firm. It contracts with companies that need the services of professionals like Nekkanti for their IT projects. Nekkanti Deposition [DN 35-1] 27:4–16, 28:4–7. Global Information Technology did not fire Nekkanti, but its client Cognizant stopped staffing him on projects after it learned that Nekkanti's name appeared on the forged letter. Motion for Summary Judgment [DN 32] at 5.

V-Soft is the defendant. It is also an IT consulting and outsourcing firm that places IT workers, including foreign workers, with businesses and subcontractors that need their IT skills. Response [DN 35] at 3.

The absent witness is one of V-Soft's former employees, Saisivakumar Yerramneni. He is a foreign citizen who worked in the United States under an H-1B visa that authorizes temporary work by "nonimmigrants." 8 U.S.C. § 1184(c). When it sought to extend the visa, V-Soft asked Yerramneni to obtain a letter from a client attesting to his work in a "specialty" occupation. § 1101(a)(15)(H). Yerramneni drafted a letter, asked Nekkanti to sign it, and then added the corporate logo of Anthem, a Cognizant client, which staffed both Nekkanti and Yerramneni on an IT project in Atlanta.

Yerramneni, Anthem, Cognizant, and Global Information Technology are not parties to this lawsuit.

### B.  Admission Made by V-Soft's Employee

The core facts described above are undisputed. One additional piece of evidence is not so clear cut.

Yerramneni is apparently no longer in this country and unavailable to testify regarding his intent (or anything else). *See* Oral Arg. Tr. [DN 43] at 2:25–3:3. At least part of his account of this saga, however, is available in the form of an email addressed from Yerramneni to V-Soft's general counsel, Phil Williams. *See* October 24, 2018 email to Phil Williams [DN 32-7] ("Williams Email"). In that email, Yerramneni apologetically admitted to altering the letter. A subsequent phone call between Williams and Yerramneni apparently confirmed the email's admission. *See* Williams Deposition [DN 32-2] 20:11–20. V-Soft then fired Yerramneni because of the forgery. *Id.*

After Nekkanti's summary-judgment motion relied on the email to Williams, V-Soft objected on generic hearsay grounds. Response at 7. Federal Rule of Evidence 801(d)(2), however, treats an opposing party's admission as non-hearsay. And subsection (d)(2)(D) specifically addresses statements made by an opposing party's employees: they are "not hearsay" if offered against the opposing party and made by the party's employee "on a matter within the scope of that relationship and while it existed." Despite the Court's invitation, V-Soft has not offered any rebuttal to the email's admissibility on this ground.[1]

---

[1] During oral argument, V-Soft had no counter to Nekkanti's argument that the email is admissible under Rule 801(d)(2)(D). Oral Arg. Tr. at 5:9–7:3. Nor did V-Soft move to exclude the statement in response to Nekkanti's motion, reply, or oral argument. Given these opportunities to rebut the email's admissibility, and V-Soft's failure to do so, the Court is well within its discretion to treat the hearsay question as conceded. *See AK v. Behavioral Health Sys.*, 382 F. Supp. 3d 772, 774–75 (M.D. Tenn. 2019).

The Court, for its part, is unaware of a basis on which V-Soft *could* support its objection. Yerramneni made the statement while he was employed at V-Soft, directed his comments to a high-ranking V-Soft officer, and discussed a visa-extension petition that V-Soft told him he needed in order to continue working there. That sure sounds like a comment "within the scope of th[e] relationship and while it existed." *Id.* In similar situations, courts often admit a party employee's statements as an opposing-party admission.[2] Consistent with those decisions, the Court may and does consider the email as non-hearsay evidence on summary judgment.

C.     **Evidence of Intent**

The two critical questions in dispute both focus on intent: first, Yerramneni's liability for forgery and, second, whether V-Soft is vicariously responsible for any damages that Yerramneni's forgery caused.

Given the lack of testimony from Yerramneni, V-Soft contends the Court cannot say whether he intended to deceive the government and benefit the company by altering the letter, or instead acted purely out of self-interest in securing a visa extension for himself. And because the case is before the Court on Nekkanti's summary judgment motion, the facts are limited to the record evidence the parties identified in their motion papers, *see* Fed. R. Civ. P. 56(c), and that evidence is viewed in the light most favorable to V-Soft as the non-moving party, *see Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

\* \* \*

Yerramneni worked for V-Soft between June 2017 and October 2019. V-Soft Employment Agreement [DN 32-4] at 1; Williams Deposition 20:6–10. Yerramneni met Nekkanti while working for V-Soft on a project for Anthem in Atlanta. Nekkanti Deposition 18:24–19:1, 52:1–24. Anthem sought staffing help from Cognizant, which looked to a vendor called CTI, which in turn sought out V-Soft, which staffed Yerramneni on the Anthem project. Williams Deposition at 32:8–33:6.

Yerramneni's nonimmigrant H-1B visa made him eligible to work temporarily in the United States. *Id.* at 15:11–17; *see* 8 U.S.C. § 1101(a)(15)(H).[3] Under the Immigration and Nationality Act, employers, rather than employees, petition the U.S. government for these visas. 8 U.S.C. § 1184(c). The visa program required V-Soft to apply for the visa and show that Yerramneni worked in a "specialty" occupation. *See* § 1101(a)(15)(H).

---

[2] Courts regularly treat the statements of employees of a litigating company as admissible non-hearsay. *See, e.g.*, *Back v. Nestle USA*, 694 F.3d 571, 577 (6th Cir. 2012) (employee's statement would have been admissible against a corporate defendant, if not for a double-hearsay issue); *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir. 2000) (affirming admission of employee's recollections as the "non-hearsay admission of a party-opponent"); *Robert R. Jones Assocs. v. Nino Homes*, 858 F.2d 274, 276 (6th Cir. 1988) (court properly admitted statement of an "agent" regarding his "employment relationship" with the defendant under Rule 801(d)(2)(D)); *United States ex rel. CKF Excavating v. ACC Constr.*, No. 5:11-cv-42, 2012 WL 3161294, at *3 (W.D. Ky. Aug. 3, 2012) ("Where a suit is pursued against a corporation or an entity, documents or correspondences created by its directors, employees, or agents may be construed as non-hearsay statements, depending on their context.").

[3] "[A]n alien … who is coming temporarily to the United States to perform services … in a specialty occupation" may be permitted in the United States with an H-1B visa. 8 U.S.C. § 1101(a)(15)(H)(i)(b)–(ii).

In the summer of 2018, Yerramneni needed to extend his visa to remain in the country and thereby remain employed at V-Soft. Yerramneni's Nonimmigrant Visa H-1B Extension Petition [DN 32-1] at 1; Williams Deposition 19:25–20:1. Consistent with V-Soft's apparent practice with other employees utilizing H-1B visas, Yerramneni received at least some assistance from V-Soft regarding the application. No evidence before the Court undermines what V-Soft tells employees on page 7 of its Employment Agreement: "the Employer at its expense will, as permitted by applicable statue of regulation, assist the Employee as a sponsor or petitioner in the administrative and legal process necessary and required for the Employee, a non-US citizen, to obtain an appropriate visa or other work authorization to accept or continue employment in the United States."

In order to satisfy the H-1B renewal requirements, 8 U.S.C. § 1361,[4] V-Soft required Yerramneni to provide a letter from Anthem attesting to his work on its project. Williams Deposition at 30:15–31:15; *see also* 8 C.F.R. § 214.2 (h)(4)(i)(B) (describing requirements for H-1B petition). Yerramneni's email to the V-Soft general counsel stated that neither Anthem nor Cognizant would provide such a letter. Williams Email at 1. So he asked his colleague, Nekkanti, to sign a document attesting to his work for Anthem. *Id.*

That letter, drafted by Yerramneni, described his work as an "Application Developer." *See* Nekkanti Affidavit [DN 32-8] ("Anthem Letter") at 1; Nekkanti Deposition 74:20–75:6. The letter further stated that "V-Soft Consulting Group Inc. and Saisivakumar Yerramneni's services have helped [the Anthem project members] to meet the project deadlines in [a] timely and efficient manner. This continued service is critical for the further progress of our projects …." Anthem Letter at 2. Nekkanti signed the letter after Yerramneni explained to him that he needed a document that showed his "project responsibilities certified by a co-worker." Nekkanti Deposition 77:14–17; Motion for Summary Judgment at 4 n.17.

Yerramneni then learned from V-Soft that the letter from Nekkanti would not suffice; V-Soft required a letter from the client itself. Williams Email at 1. Believing that neither Anthem nor Cognizant would provide such a letter, Yerramneni altered the document Nekkanti had already signed by adding the Anthem logo. *Id.* He didn't tell Nekkanti. Nekkanti Deposition 85:24–86:6. V-Soft submitted the visa-extension application (which included the altered letter) to the United States Citizenship and Immigration Services. *See* Yerramneni's Nonimmigrant Visa H-1B Extension Petition at 27–28.

During the fall of 2018, immigration officials contacted Anthem to verify Yerramneni's employment, and Anthem in turn reached out to Cognizant. Anthem-Cognizant Emails [DN 32-9]. When Cognizant discovered that someone had added Anthem's logo to the letter without authorization, it terminated Nekkanti from the Anthem project and barred him from any further Cognizant work. Nekkanti Deposition at 81:12–19. Although Nekkanti no longer works at Global

---

[4] 8 U.S.C. § 1361 states that "[w]henever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be."

4

Information Technology, it did not fire Nekkanti (at least not directly) because of Yerramneni's alteration. *Id.* at 28:15–17, 101:14–16.

V-Soft, however, did fire Yerramneni. After working with the United States Citizenship and Immigration Services to investigate Yerramneni's visa-extension application, V-Soft "discovered that he had falsified a letter from Anthem." Williams Deposition at 20:11–13. V-Soft's general counsel emailed Yerramneni requesting a copy of correspondence Yerramneni sent or received about the Anthem client letter. Yerramneni responded with an email explaining what he did and why he did it:

> I requested anthem HR to provide me and Client letter from my H1 purpose. They denied and told me that they need a request from employer (Cognizant) for this. I reached cognizant management for that and they said they will not ask Anthem for any so[r]t of paper work. Few of my friends suggested to get a co worker affidavit from my team and that helps in supporting documentation. And I prepared it and got a sign from Shrikanth [Nekkanti]. But Vsoft said they need a client letter with the drafted format they sent. I had no choice to get this so I filled the draft for client letter I pasted Anthem LOGO on it. I am very very sorry for what happened. I will never repeat this again. Please apologize me.

Williams Email at 1. Then V-Soft fired Yerramneni on October 29, 2019. Williams Deposition 20:6–10.

### D.     Nekkanti's Summary-Judgment Motion

Nekkanti sued V-Soft in state court alleging tortious interference with business advantage, tortious interference with contract, forgery, and negligent supervision. Complaint [DN 1-1] ¶¶ 29–53. V-Soft removed the case to federal court based on diversity jurisdiction. Notice of Removal [DN 1]. It then moved to dismiss the case for failure to state a claim for tortious interference with business advantage, tortious interference with contract, negligent supervision, or forgery. Motion to Dismiss [DN 8].

The Court granted the motion to dismiss in part. Motion to Dismiss Opinion [DN 11] at 1. The only claim that remains is the forgery cause of action under K.R.S. § 516.040(1). *Id.* at 9. In response to V-Soft's argument that forgery is only a criminal offense, the Court explained that Nekkanti could assert a forgery claim via Kentucky's negligence per se statute, K.R.S. § 466.070, because the forgery law is penal in nature and Nekkanti falls within the class of persons the legislature intended the law to protect. *Id.* at 6–8.

Now Nekkanti has asked for summary judgment on the question of liability in connection with his forgery claim.

Summary judgment is appropriate here because the only evidence the parties have identified in the record indicates that Yerramneni committed forgery and did so while acting within the scope of his employment, which makes V-Soft vicariously liable for damages caused by the forgery. No jury could reasonably find that Yerramneni didn't intend to deceive the government by manipulating the letter V-Soft submitted with the visa application. And the record likewise requires the Court to conclude that V-Soft is legally responsible for Yerramneni's forgery because he acted, at least in part, to benefit V-Soft.

5

***1. Whether Yerramneni violated Kentucky's forgery statute.*** Under K.R.S. § 446.070, someone "injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This "negligence per se" statute "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005); *see also* Motion to Dismiss Opinion at 6.

Nekkanti claims that Yerramneni's alteration of the "Anthem" letter violated the Kentucky forgery statute and got Nekkanti fired. Under K.R.S. § 516.040(1), someone is guilty of third-degree forgery "when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument." And falsely altering a written instrument "means to change, without the authority of anyone entitled to grant it, a written instrument … so that such instrument in its thus altered form appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer." K.R.S. § 516.010(5).

Here, Yerramneni altered Nekkanti's letter to make it appear to be an authentic and authorized letter from Anthem. Williams Email at 1; Williams Deposition at 20:11–20. The parties' forgery disagreement extends only to whether Yerramneni "intended to defraud, deceive, or injure another," apparently the federal immigration authorities. (Though he acted through V-Soft, which actually submitted the visa application to the United States.) Yerramneni indisputably altered Nekkanti's letter to include the Anthem logo. He did so without any authorization from Anthem. He understood that Anthem would not provide him with the letter that V-Soft required for the visa extension petition. All of this is apparent from the email he sent Williams, *see* DN 32-7, and the evidence described above, *see* Part C above. Nothing in or about the email itself indicates Yerramneni did not in fact act with the intent he described on the face of the email.

V-Soft, moreover, was unable to point the Court to a single piece of evidence indicating Yerramneni acted with some other intent. Oral Arg. Tr. at 10:24–11:7. V-Soft has consistently argued, in its papers and at the hearing, that the email does not in fact reveal Yerramneni's intent. But that is only legal argument about potential inferences; it is not evidence that can resist summary judgment under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (moving party carries its burden of proof by pointing to "an absence of evidence to support the nonmoving party's case"). The only evidence concerning V-Soft's contemporaneous understanding of the email is that it *agreed* with Nekkanti's present reading: V-Soft fired Yerramneni for modifying the letter. Williams Deposition at 20:11–20.

To be sure, we'd all know more if Yerramneni had testified (or would do so) under oath regarding what he did and why. But no one holds out any hope that will happen. Oral Arg. Tr. 2:23–3:3. So we are left without further explanation of the facts beyond the email itself. And V-Soft is left without any *evidence* that would contradict that email: evidence that would "present[] a sufficient disagreement to require submission to a jury," because the only evidence in the record (as opposed to V-Soft's legal arguments *about* that evidence) "is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255); *In re ClassicStar Mare Lease Program*, 727 F.3d 473, 484 (6th Cir. 2013)) ("the evidence" of intent to defraud "[wa]s 'so one-sided that no reasonable person could decide the contrary.'") (quoting *GenCorp v. Am. Int'l Underwriters*, 178 F.3d 804, 819 (6th Cir. 1999)).

6

Summary judgment may be appropriate even if the factual question concerns an individual's state of mind. Although "[q]uestions of intent are *usually* left to the finder of fact," Kentucky and federal courts alike have recognized that "there are circumstances when even questions of state of mind can be decided by summary judgment." *Educ. Training Sys. v. Monroe Guar. Ins. Co.*, 129 S.W.3d 850, 852 (Ky. Ct. App. 2003) (emphasis added) ("[T]he evidence of Earl's intent was so plain from the letter to John's counsel that it was properly the subject of summary judgment."). "Summary judgment can be proper on any issue *including state of mind questions* such as intent and expectation," Kentucky courts recognize, "when any claim has no substance or controlling facts are not in dispute …." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 276–77 (Ky. 1991) (emphasis added).

This is just such a situation. No evidence before the Court could support a finding that Yerramneni altered the letter with any intent besides passing off the letter as coming from Anthem. Everything we know from Yerramneni, plus everything we know from V-Soft's actions, cuts in favor of Yerramneni's intent to deceive. (Indeed, V-Soft's argument regarding vicarious liability, discussed below, appears to *depend* on Yerramneni's intent to dupe the government.) Based on the record currently before the Court, therefore, no genuine dispute of material fact exists regarding Yerramneni's intent on this point.

**2. Whether V-Soft is liable for Yerramneni's forgery.** The second question is whether Yerramneni acted within the scope of his employment. "An employer's liability under the doctrine of 'respondeat superior' requires that the proximate cause of a plaintiff's injury must have been an act committed by an employee acting within the course and scope of his employment." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 731 (Ky. 2009).

Two default rules—running in opposite directions but easily reconcilable—affect the analysis here: employee actions presumptively fall within the scope of employment, but intentional torts presumptively do not. "[I]n general, ... the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." *Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 52 (Ky. 2008) (alterations adopted) (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* 505 (5th ed. 1984)). Yet "[g]enerally, intentional torts are committed outside the scope of the employment." *Hensley v. Traxx Mgmt. Co.*, --- S.W.3d ---, No. 2018-CA-928-MR, 2020 WL 2297001, at *3 (Ky. Ct. App. May 8, 2020).

These are obviously only heuristics, not ironclad rules. Employers still may be (and regularly are) held vicariously liable for the intentional torts of their employees. *See, e.g.*, *McCoy*, 244 S.W.3d at 57 (Scott, J., concurring in part) ("There are numerous decisions finding employers vicariously liable for the intentional torts of their employees.") (collecting cases).

To answer the "critical" scope-of-employment question in a particular case, *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000), Kentucky courts look to the Restatement (Third) of Agency (2006). Section 7.07 provides that:

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.

7

> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

*McCoy*, 244 S.W.3d at 51 (adopting the Third Restatement's test).

"*Any purpose* of the employer" is a portion of the standard worth emphasizing: the law recognizes that employees may act for multiple reasons, or for mistaken reasons. *Id.* (emphasis added). And in those circumstances, Kentucky law leaves the employer responsible. *See id.* at 51–52 ("[T]he master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business.").

Who applies this test—the jury or the judge? V-Soft insists that whether Yerramneni "intended … to serve any purpose of" its business is question of fact for a jury to decide. *See* Response at 9 ("the purpose to be served by Yerramneni's conduct and his intent are questions of fact for the jury to decide in this case"). Not so. "The question … whether an employee's conduct is within the scope of employment is a question of law …." *Booker v. GTE.net LLC*, 350 F.3d 515, 518 (6th Cir. 2003).[5] To be sure, this determination remains one that depends on facts and factual inferences. But it is a determination for the Court to make. *Id.* And even if this were a jury question, the evidence available on summary judgment again points uniformly to the conclusion that Yerramneni acted in furtherance of V-Soft's business.

V-Soft contends Yerramneni acted "so far outside the scope of his employment that it terminated his employment upon learning of [his action]." Response at 9. But the Court cannot conclude, on this record, that Yerramaneni acted "from purely personal motives which are in no way connected with the employer's interests." *McCoy* 244 S.W.3d at 52 (alterations adopted) (quoting *Prosser and Keeton* at 506). What evidence indicates that his motives were purely personal? He is not here, and has left only an email saying he was trying to do what he thought his employer required. The email, in describing "my H1 purpose," speaks exclusively in professional terms; it mentions clients, contractors, and coworkers no fewer than ten times.

True, it is at least conceivable that Yerramneni acted only out of concern for his own prospects to remain in the United States, and for reasons utterly divorced from his continuing work for V-Soft. V-Soft hasn't pointed to any evidence supporting that theoretical possibility, however. On the other side of the ledger, we find evidence regarding Yerramneni's efforts to keep working for V-Soft and its clients by gathering the paperwork V-Soft itself requested for his visa-extension petition. Nekkanti Deposition 77:14–17; 79:9–12. As discussed above, we know V-Soft's business depended at least to some extent on H-1B immigrant employees, and that Yerramneni needed a proper visa to remain

---

[5] As in *Booker*, the Court applies "the state law of Kentucky" to determine whether the employee acted within the scope of employment. *See* 350 F.3d at 518. Nekkanti explained that "[i]t is not exactly clear which state can be said to be the state where the forgery occurred, but it appears only two states are possible, namely, Kentucky and Georgia." Motion for Summary Judgment at 7. "V-Soft's immigration department is in [Kentucky]" and Anthem, where Yerramneni was placed, is in Georgia. *Id.* Both parties agree, however, that the law is the same regardless of which state's law applies, avoiding any conflict of laws issue. Oral Arg. Tr. at 20:12–21:1.

employed by V-Soft. *See* above at Part C. V-Soft unquestionably helped Yerramneni prepare and then submitted the application, which included the "Anthem" letter, to the government. Yerramneni's Visa Extension Petition at 1; Motion for Summary Judgment at 8–9. All this evidence indicates Yerramneni "intended … to serve [a] purpose of" V-Soft. *McCoy*, 244 S.W.3d at 51.

Again, V-Soft points to Yerramneni's email to the general counsel, urging that a jury could draw multiple inferences from it. Oral Arg. Tr. at 16:17–17:9. Yet no evidence intrinsic or extrinsic to the email would support the notion that Yerramneni was acting only for himself. In fact, the record could only support the contrary inference, rendering V-Soft's position pure speculation—and therefore insufficient to support a jury verdict. *See Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions."). At oral argument, V-Soft could point to no other evidence indicating Yerramneni was not acting—*at least in part, see McCoy*, 244 S.W.3d at 51—to further V-Soft's business. Oral Arg. Tr. at 16:25–17:9. No words from Yerramneni, no affidavits from V-Soft employees, and nothing in Williams's deposition testimony speaks to any intent by Yerramneni to act on purely personal motives, as V-Soft acknowledged. *Id.* Again, the email itself cuts against that reading, as discussed above. Left without any contrary evidence, the record compels summary judgment in favor of Nekkanti on the question of vicarious liability for Yerramneni's forgery.

### E. Damages

Granting summary judgment on liability does not end this case. The parties still dispute damages. V-Soft asserts Nekkanti suffered no loss because he continued working in other IT jobs. *See* Oral Arg. Tr. 4:6–8. That question, albeit critical to this case, is not before the Court at this time: the parties haven't briefed it and V-Soft doesn't contend that the absence of damages precludes a liability ruling on partial summary judgment. At argument the parties agreed that if the Court granted Nekkanti's motion, a trial on damages would remain on the horizon. *Id.* at 3:18–4:4.

### ORDER

The Court grants Nekkanti's motion for summary judgment with respect to liability.

Benjamin Beaton, District Judge
United States District Court

cc: counsel of record

April 28, 2021