UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Shrikanth Nekkanti**                                                                             **Plaintiff**

v.                                                                            **No. 3:18-cv-784-BJB**

**V-Soft Consulting Group, Inc.**                                        **Defendant**

\* \* \* \* \*

### OPINION & ORDER

Shrikanth Nekkanti sued V-Soft Consulting Group because its employee, Saisivakumar Yerramneni, altered and submitted an immigration document Nekkanti had signed. Nekkanti is an IT professional, and V-Soft places IT employees at companies in need of them (though it didn't employ Nekkanti). Complaint (DN 1-1) at ¶¶ 6 & 11. One claim—negligence per se based on the V-Soft employee's third-degree forgery—survived both the motion-to-dismiss and summary-judgment stages. *Nekkanti v. V-Soft Consulting Group*, No. 3:18-cv-784, 2021 WL 1667964 (W.D. Ky. Apr. 28, 2021). Indeed, Nekkanti has already prevailed on summary judgment for liability, and a jury trial to determine his damages will begin on October 26, 2021. Order (DN 49). V-Soft filed two motions in limine (DNs 53 & 54) on four distinct issues that will affect the witnesses and evidence the parties may present at trial.

### A. Motion to Exclude Cognizant Employees

Nekkanti plans to call two witness who worked with him at Cognizant, the IT-staffing firm that stopped using Nekkanti on its projects after discovering the forgery. Nekkanti's counsel believes they would testify (assuming he can secure their attendance at trial, which is not certain) about the reputational and emotional impact Nekkanti felt after he was "fired" (a characterization V-Soft disputes).

The two witnesses shouldn't be allowed to testify at all, according to V-Soft, because Nekkanti did not identify them as potential witnesses in his September 2019 initial disclosures or since, leaving V-Soft to speculate on the content of their testimony. Motion in Limine to Exclude Cognizant Employees (DN 53) at 2–3. Their names did appear in documents produced in connection with the plaintiff's initial disclosures, and Nekkanti underscores that he discussed them both at length during his deposition, minimizing any surprise their trial testimony might cause V-Soft. Response to MIL to Exclude Employees (DN 57) at 4–5. But the fact remains that Rule 26(a)(1)(A)(i) requires a party to provide "the name, and if known, the address and telephone number of each individual likely to have discoverable information."

1

Nekkanti points to no authority indicating that including witness names as part of document discovery satisfies this requirement.

Rule 37, in fact, provides that the party that failed to comply with its disclosure obligations "is not allowed to use that information or witness to supply evidence" if it fails to disclose under Rule 26, unless it can show the failure is "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Nekkanti has not shown either. *See generally Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015). As to sanctions for failures to disclose, Rule 37 permits the court to exclude the evidence or the witness entirely, or to "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1), (c)(1)(C).

The main prejudice to V-Soft is the lack of an opportunity to prepare for these witnesses' testimony or to obtain discoverable information regarding their involvement. This risk of surprise, however, may be mitigated without *entirely* depriving the jury and Nekkanti of their information.: the Court can and will impose the lesser sanction of requiring Nekkanti to make the witnesses available for a (remote) deposition before offering their testimony at trial. *See Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 533 (7th Cir. 2003) (trial judge should have allowed the prejudiced party to depose the undisclosed expert); *Kull v. Village of Yorkville*, No. 2:07-cv-686, 2008 WL 5188167, at *3–4 (S.D. Ohio Dec. 10, 2008) (permitting plaintiff to conduct discovery regarding undisclosed witnesses).

The Court finds that Nekkanti violated Rule 26 when he failed to disclose the Cognizant employees, but denies V-Soft's request for the maximum sanction of exclusion, provided that counsel for Nekkanti succeeds in making these two witnesses available for depositions in advance of the trial date.

**B. Motion to Exclude Damages**

V-Soft also moves to exclude evidence of punitive damages, emotional-distress damages, and attorney fees—on the ground that none are legally available to Nekkanti. Motion in Limine to Exclude Damages (DN 54).

**1. Punitive damages**. Did the Kentucky General Assembly authorize this extraordinary remedy in so-called "negligence per se" cases? KRS § 446.070 authorizes a "person injured by the violation of any statute" to "recover from the offender such damages as he sustained by reason of the violation." This Court has already ruled, as a matter of law, that Yerramneni violated the third-degree forgery statute. DN 45 at 5–6. A jury still must determine the amount of "damages [Nekkanti] sustained by reason of the violation." *Id*. Do punitive damages fall within that class of damages? The answer directly affects the evidence a trial court admits and the instructions it delivers, illustrating the importance of addressing this issue before trial.

2

The Kentucky Court of Appeals addressed this question eight years ago in *Thompson v. Estate of Porter*, No. 2011-CA-1055, 2013 WL 2257710, at *7 (Ky. Ct. App. May 24, 2013). That unpublished opinion appears to be the only caselaw on point, rendering the decision appropriate for this Court to follow. *See* Ky. R. Civ. P. 76.28(4)(c); *Ziegler v. IBP Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001) (an unpublished appellate decision is treated as binding precedent unless "other persuasive data" indicate "the highest court of the state would decide otherwise"). Chief Judge Clayton's reasoning on behalf of a unanimous panel including then-Chief Judge Acree and now-Justice Keller, moreover, would persuade even if it didn't bind:

> [N]o reported Kentucky decision has yet expressly stated whether KRS 446.070 authorizes an award of punitive damages. Our Supreme Court, however, has made it clear that where the legislature failed to provide for the "express inclusion of punitive damages in these statutes[,]" punitive damages were not available. *Kentucky Dept. of Corrections v. McCullough,* 123 S.W.3d 130, 139–40 (Ky.2003) (interpreting KRS 344.450). Since no express inclusion of punitive damages is found in KRS 446.070, punitive damages are not available to the extent [the plaintiff, like Nekkanti] based the claims on KRS 446.070 and the underlying statutes that establish a duty. *See Jackson v. Tullar,* 285 S.W.3d 290, 298 (Ky. App. 2007).

*Thompson*, 2013 WL 2257710, at *7.

In *Department of Corrections v. McCullough*, the decision that guided *Thompson*, the Kentucky Supreme Court interpreted the similar statutory phrase "actual damages sustained" to refer only to compensatory—not punitive—damages. 123 S.W.3d at 137–38 (interpreting KRS § 344.450). To be sure, § 446.070 refers to "damages as he sustained," omitting the term "actual"—but this makes little difference. As *McCullough* and *Thompson* both instructed, the statute's lack of "express inclusion of punitive damages" forecloses their availability. *Id.* at 140; *Thompson*, 2013 WL 2257710 at *7.

But could another statute supply an "express" punitive-damages remedy even if the negligence-per-se statute doesn't? Nekkanti points to Kentucky's punitive-damages statute, KRS § 411.184. As he reads it, this provision both (1) makes this extraordinary relief available in *all* cases of fraud, including forgery, and (2) overrides *any* remedial limitation imposed by the underlying cause of action. Nekkanti is wrong on both counts. The statutory definition of fraud *excludes* vicarious liability for a forgery intended to deceive someone other than the plaintiff, and the Kentucky

3

Supreme Court has squarely *rejected* the contention that § 411.184's supersession clause turns all other statutory-damages limitations into surplusage.

The relevant portions of the statute (all italics added) are worth a close look:

**411.184 Definitions -- Punitive damages -- Proof of punitive damages.**

(1) As used in this section and KRS 411.186, unless the context requires otherwise:
  \*\*\*
  (b) "Fraud" means an intentional misrepresentation, deceit, or concealment of material fact *known to the defendant* and made with the *intention of causing injury to the plaintiff*.
  \*\*\*
  (d) "Plaintiff" means any party claiming punitive damages.
  (e) "Defendant" means any party against whom punitive damages are sought.
  \*\*\*
(2) A plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that *the defendant from whom such damages are sought* acted toward the plaintiff with oppression, *fraud* or malice.
(3) *In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question.*
\*\*\*
(5) This statute is applicable to all cases in which punitive damages are sought and *supersedes any and all existing statutory or judicial law insofar as such law is inconsistent* with the provisions of this statute.

As to whether "Yerramneni's forgery was a fraudulent act" under § 411.184(1), the statute plainly requires that the actual defendant "from whom [punitive] damages are sought" intended to defraud not just anyone, but the actual plaintiff "claiming punitive damages." Ky. Rev. Stat. Ann. § 411.184(1)(d); *see Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915 (Ky. 2003) (KRS § 411.184 prevents recovery from an estate because the deceased tortfeasor's estate did not act toward the plaintiff with oppression, fraud, or malice). This direct linkage between the defendant's intentional fraud and the plaintiff's harm is incompatible with Nekkanti's indirect theory of liability in this case: Yerramneni (and potentially V-Soft) intended to trick *the immigration authorities* into approving an H1-B visa on false pretenses. *See Nekkanti*, 2021 WL 1667964, at \*2. They didn't trick Nekkanti into signing the affidavit; he signed it willingly, only for Yerramneni and potentially V-Soft to pass it off to immigration authorities as something it wasn't—a letter of support from their client, Anthem. *Id.* Even before we reach the question whether V-Soft "authorized," "ratified," or "should have anticipated" this conduct (a separate statutory hurdle

4

Nekkanti would have to clear[1]), the statutory text bars a construction that would render punitives available in all forgery cases, no matter the victim.[2]

As to whether § 411.184 applies "to all cases in which punitive damages are sought," "supersed[ing] any and all other statutes which may conflict with it," Opp. at 8 (emphasis in original), the Kentucky Supreme Court again has foreclosed Nekkanti's interpretation. While § 411.184 "preempt[ed] the common law on punitive damages," *McCullough*, 123 S.W.3d at 139, it altered the standard for proving punitive damages when they are available, rather than making them available in all cases encompassed by § 411.184, *id.* at 140. In response to the same literalistic argument advanced by Nekkanti today and the dissent in *McCullough*, the Kentucky Supreme Court explained that "the General Assembly has enacted a number of statutes that expressly provide for punitive damages" since the passage of § 411.184." *Id.* at 140. The Court found no basis to read the legislature's amendment of one general damages provision to render "redundant and unnecessary" all these other specific provisions. *Id.*; *see also id.* at 142 (Stumbo, J., dissenting) (unsuccessfully urging Nekkanti's position: that seeking punitive damages satisfies the standard for availability). Nekkanti offers no authority supporting his reading that could distinguish the ruling set forth in *McCullough*.

Should these arguments to set aside Nekkanti's punitive-damages claim even be considered in response to a motion in limine, however? Nekkanti says no: this is just an untimely and mislabeled motion for summary judgment that the Court lacks authority to address. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 562 (6th Cir. 2013) (district court should not have considered motion in limine raising non-evidentiary issues appropriately addressed on summary judgment).

---

[1] Nekkanti also would need to show by "clear and convincing evidence" that V-Soft "acted toward the plaintiff with oppression, fraud or malice," § 411.184(2), and "authorized or ratified or should have anticipated the conduct in question." § 411.184(3). During the final pre-trial conference, Nekkanti's counsel stated that the only evidence related to punitive-damages that would be excluded by this motion in limine is deposition testimony from a deceased witness regarding a purported third affidavit, which is apparently not in the record but was apparently submitted by V-Soft to immigration authorities.

[2] Nekkanti cites two Kentucky Court of Appeals decisions, *Mo-Jack* and *Tavadia*, for the proposition that all forgery claims can result in punitive damages. Response to MIL to Exclude Damages at 8; *Mo-Jack Distributor v. Tamarak Snacks*, 476 S.W.3d 900 (Ky. Ct. App. 2015); *Tavadia v. Mitchell*, 564 S.W.3d 322 (Ky. Ct. App. 2018). Kentucky defines forgery as "the false making or material alteration with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." *Lincoln Bldg. & Loan Ass'n v. Cohen*, 165 S.W.2d 957, 960(Ky. 1942). Perhaps Nekkanti could have prevailed on a common-law forgery claim, but he instead pursued his claim under a statutory theory of negligence per se. This Court determined that Yerramneni violated the *penal* forgery statute, *see* DN 45 at 5–6, and Nekkanti points to no authority for awarding common-law forgery damages for violations of the criminal statute.

But what about a motion that raises purely legal arguments that would shape the evidence, arguments, and instructions a jury would hear at trial? If no legal basis exists for a trial court to allow damages on a particular claim or remedial request, wouldn't tying a judge's hands risk unnecessary prejudice, confusion, and inefficiency during a jury trial? Plainly the answer is yes, and it is for just such reasons that trial judges enjoy ample discretion to revisit interlocutory rulings and structure the presentation of evidence at trial. *See Shinnick v. Ram Kabir, LLC*, No. 5:15-cv-160, 2016 WL 6905397, at \*1 (W.D. Ky. Nov. 23, 2016) ("Using the inherent authority to manage the course of trial before it, this Court may exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings."); *accord Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Asked how a judge should deal with a legally unsupportable claim, unchallenged until the motion-in-limine phase, Nekkanti's counsel couldn't offer any alternative approach. And *Louzon*, it turns out, is consistent with the approach taken here: resolving a pure question of law before trial in order to appropriately cabin and streamline the evidence presented to a jury. There the Sixth Circuit distinguished questions of law and questions of fact—the latter of which, it emphasized with good reason, is much riskier and more prejudicial to address on the eve of trial without the procedural protections of Rule 56. *Louzon*, 718 F.3d at 561.

Here, however, the Court faces a pure question of statutory interpretation: would "damages [he] sustained" embrace punitive damages, and even if not, does § 411.184(5) override the limited remedies authorized by § 466.070? Those aren't questions a jury would ever answer, but could lead to prejudicial and irrelevant evidence and argument if left unaddressed. Perhaps V-Soft should have moved for summary judgment on punitive damages before the deadline passed on November 15, 2020—although the case certainly sits in a much different posture now that the *plaintiff* established liability. Regardless, allowing Nekkanti to prove up a legally erroneous claim during his case-in-chief, only to see it rejected in a directed verdict, would amount to pure deadweight loss. *Louzon* does not compel such inefficiency, as aptly recognized by a recent Sixth Circuit panel in *Porter v. AAR Aircraft Servs.*, 790 F. App'x. 708, 713 (6th Cir. 2019) (district court may grant summary judgment *sua sponte* before trial, notwithstanding *Louzon*, so long as the losing party had notice and an opportunity to respond).

Nekkanti had that here. This ruling does not deprive Nekkanti of any "procedural protections that [would've] attach[ed] at summary judgment" if V-Soft had filed this motion in a more orthodox fashion earlier in the case. *Louzon*, 718 F.3d 561. Both in the briefing and during extensive argument at the final pretrial conference, Nekkanti received adequate notice and multiple opportunities to fully respond to these arguments. The Court possesses ample authority over its docket and the jury's time to allow it to resolve this question of statutory interpretation before, rather than during, the trial. *See Luce*, 469 U.S. at 41 n. 4 (1984) (district courts have "inherent authority to manage the course of trials").

**2. Emotional-Distress Damages**. As to emotional damages, Kentucky courts classify emotional distress or pain and suffering within the umbrella of compensatory damages. *See Asbury Univ. v. Powell*, 486 S.W.3d 246, 264 (Ky. 2016) (treating $300,000 awarded for "humiliation, embarrassment, and emotional distress" as compensatory damages under Kentucky statute). Nekkanti's claim for pain and suffering, V-Soft notes, is not supported by any expert testimony and cannot show the type of extreme and outrageous conduct necessary for recovery. Motion to Exclude Damages at 6. But a plaintiff is not required to offer "expert medical or scientific proof" in seeking emotional damages unless he claims intentional or negligent infliction of emotional distress. *Indiana Insurance Co. v. Demetre*, 527 S.W.3d 12, 39 (Ky. 2017) (limiting "*Osborne*'s requirement of expert medical or scientific proof … to claims of intentional or negligent infliction of emotional distress"). As to V-Soft's argument that Nekkanti's remaining evidence is insufficient to support a verdict awarding emotional damages, that position would have been better raised in a summary-judgment motion, which V-Soft did not file, or else in a jury argument, which V-Soft is free to make. This Court, however, has no basis for taking that determination away from the jury before trial.

**3. Attorney Fees.** Finally, with regard to attorney fees, the parties agree that the jury should not and will not hear any evidence regarding fees or any basis for shifting them. The Court denies this aspect of the motion in limine as moot.

## ORDER

The Court denies V-Soft's motion to exclude testimony from the Cognizant employees, conditioned upon Nekkanti's counsel making them available for depositions. The Court grants V-Soft's motion to exclude evidence of punitive damages, denies the motion with respect to emotional-distress damages, and denies the motion with respect to attorney fees.

Benjamin Beaton, District Judge
United States District Court

October 14, 2021