UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

S<small>HRIKANTH</small> N<small>EKKANTI</small>                                                             P<small>LAINTIFF</small>

v.                                                                            No. 3:18-cv-784-BJB-RSE

V-S<small>OFT</small> C<small>ONSULTING</small> G<small>ROUP</small>, I<small>NC</small>.                                                D<small>EFENDANT</small>

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

V-Soft Consulting moved for judgment as a matter of law setting aside the jury's award of damages to Shrikanth Nekkanti for lost wages and emotional distress. JMOL Motion (DN 81). The Court has already laid out the complicated facts of this case in its summary-judgment order and will rely on that for background here. *See* DN 45.

That order awarded partial summary judgment to Nekkanti on liability: evidence that V-Soft Consulting didn't dispute established its vicarious liability for its employee's forgery under Kentucky's negligence per se statute. The Court held a trial on the issue of damages, *id.* at 9, and a jury awarded Nekkanti $11,635.00 for lost wages and $75,000.00 for emotional distress, Jury Verdict (DN 74).

V-Soft moved for judgment as a matter of law following Nekkanti's proof of emotional damages and moved again following entry of judgment. Trial Transcript, Vol. I (DN 85) at 85:17–19; JMOL Motion. V-Soft also now moves for remittitur and alternatively for a new trial. JMOL Motion at 8–10. Because V-Soft forfeited any argument concerning lost wages and Nekkanti offered evidence and testimony sufficient to support the jury's emotional-distress damages finding, the Court denies the motion.

### I.  Judgment as a Matter of Law

After "a party has been fully heard on an issue during a jury trial," a court may grant judgment as a matter of law if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." F<small>ED</small>. R. C<small>IV</small>. P. 50(a)(1). A Rule 50(a) motion "may be made at any time before the case is submitted to the jury," and if denied, the moving party "may file a renewed motion," under Rule 50(b), within 28 days after entry of judgment. F<small>ED</small>. R. C<small>IV</small>. P. 50(a)(2), (b). But because the Rule 50(b) motion "is only a *renewal* of the preverdict motion" and "can be granted only on grounds advanced" in that earlier motion, the moving party forfeits any issues it fails to raise initially. *Hanover Am. Ins. Co. v. Tattooed*

1

*Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020) (quotation omitted) (emphasis added).

In diversity actions, "where the Rule 50(b) motion is based on a challenge to the sufficiency of the evidence, a state-law standard of review applies." *Hartford Fin. Servs. Grp., Inc. v. Cleveland Public Library*, 168 F. App'x 26, 30 (6th Cir. 2006). Kentucky law instructs the Court to grant a motion for a directed verdict only if "there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky. 1998). "[A]ll fair and reasonable inferences from the evidence" must be drawn "in favor of the party opposing the motion." *Id.* at 18.

**A. Lost Wages.** By not challenging the sufficiency of the evidence for lost wages in its oral Rule 50(a) motion, V-Soft forfeited this argument. After Nekkanti finished his case in chief, V-Soft "move[d] for judgment as a matter of law on [plaintiff]'s claims for travel expenses and for his emotional distress" only. Tr., Vol. I at 85:17–19. Nekkanti withdrew his request for travel costs but opposed exclusion of emotional-distress damages. *See id.* at 86. The Court orally denied V-Soft's motion, and V-Soft didn't make another motion until it filed the renewed motion at issue here. Trial Transcript, Vol. II (DN 87) at 127: 2–13. Because V-Soft cannot renew a motion it never made, *Hanover Am. Ins. Co.*, 974 F.3d at 780, the Court will not disturb the jury's award on lost wages. And in any event, as discussed below in section II, Nekkanti did offer evidence and testimony regarding his lost wages that allowed the jury to reasonably reach the conclusion it did.

**B. Emotional Distress**. Kentucky law requires a plaintiff to "submit evidence to support an award of pain and suffering." *Browder v. Smith*, No. 2019-ca-1756, 2021 WL 2753205, at *5 (Ky. Ct. App. July, 2, 2021). But the plaintiff needn't submit expert testimony to seek emotional damages. *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 39 (Ky. 2017); *see also Banker v. Univ. of Louisville Athletic Ass'n, Inc.*, 466 S.W.3d 456, 463–64 (Ky. 2015) (affirming trial court's denial of directed-verdict motion because plaintiff's and her mother's testimonies supported $300,000 emotional-distress award). So long as the plaintiff provides "clear and satisfactory" proof "from which the jury could infer that anxiety or mental anguish in fact occurred," emotional-distress damages are proper. *Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997).

V-Soft raises two arguments that Nekkanti's evidence didn't support the jury's emotional-distress damages award. First, in V-Soft's view, emotional distress must be "'severe' or 'serious'" to support a damages award, and the jury wasn't instructed to consider whether Nekkanti's emotional injuries rose to a severity that would "affect[t] his everyday life." JMOL Motion at 6; *see also* Tr. Vol. I at 86 (oral motion for JMOL) ("[H]e hasn't testified about how this has been significant or severe or disrupted his daily life."). When pressed on the legal basis for this higher standard,

2

V-Soft cited *Childers v. Geile*, 367 S.W.3d 576 (Ky. 2012), and *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012). Tr. Vol. I at 87–88. Neither goes that far.

*Childers* addressed whether the plaintiff could bring an IIED claim on facts suggesting negligent rather than intentional conduct *by the defendant*. 367 S.W.3d at 583–84. That decision has no bearing on the question whether a jury must find severe or serious distress suffered *by the plaintiff* before it may award emotional-distress damages.

*Osborne*, for its part, substituted an expert-proof requirement in favor of the physical-impact requirement previously necessary for plaintiffs to seek emotional-distress damages. 399 S.W.3d at 17–18. Expert proof, the court reasoned, would ensure plaintiffs recover for "only 'severe' or 'serious' emotional injury"—that is, when "a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* at 17.

Five years later, in *Indiana Insurance Company v. Demetre*, the Kentucky Supreme Court clarified that its decision in *Osborne* didn't require "severe or serious" injury in each and every case involving emotional-distress damages. 527 S.W.3d at 39. Rather, that heightened standard of proof applied only to IIED and NIED claims. In *Demetre*, which involved a bad-faith insurance claim, the court held that the plaintiff did *not* need to show severe or serious distress to recover emotional-distress damages after establishing liability. *Id.* The state Supreme Court expressly distinguished the emotional-distress *cause of action* at issue in *Osborne* from the emotional-distress *damages* at issue in *Demetre. See id.* at 37 & n.28 (distinguishing statutory bad-faith claims from "negligent or intentional infliction of emotional distress claims, as the elements of such a claim specifically require 'severe or serious emotional injury.'") (citing *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-cv-249, 2014 WL 4914739 (W.D. Ky. Sept. 30, 2014)); *see also Williams v. Baptist Healthcare Sys., Inc.*, No. 3:16-cv-236, 2019 WL 7546592, at *7 (W.D. Ky. Sept. 30, 2019) ("[T]he Kentucky Supreme Court has explicitly held that the heightened evidentiary standard from *Osborne* applies only to stand-alone claims for intentional or negligent infliction of emotional distress."). Resting on this distinction between the claim and the damages, moreover, *Demetre* affirmed a trial-court instruction that did *not* employ the "severe or serious" language V-Soft urges. *Id.* at 42 (Vanmeter, J., dissenting) (quoting jury instructions regarding "emotional pain and suffering, stress, worry, anxiety or mental anguish.").[1]

---

[1] Nekkanti's case does not involve a "stand-alone" IIED or NIED claim, given the lost wages he sought and recovered. Those economic damages undergird his noneconomic emotional-distress damages here, taking this claim out from under *Osborne*'s rule. *See Williams*, 2019 WL 7546592 at *7 (claim for "mental and emotional anguish, but also physical damage, prolonged pain and suffering, and medical expenses" was not a "stand-alone" claim). V-Soft never contested this characterization of the claims it faced.

V-Soft relies on *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538 (Ky. Ct. App. 2013) for the proposition that *Osborne*'s heightened standard applies to emotional-distress damages in ordinary negligence claims. JMOL Motion at 6. In *Keaton*, the Kentucky Court of Appeals concluded that the plaintiff's testimony standing alone was insufficient to show "severe emotional distress" under a "simple negligence" claim. 436 S.W.3d at 543–44. But this decision precedes *Demetre*, which clarified that *Osborne*'s heightened standard reached only stand-alone emotional-distress claims. V-Soft points to no precedents after *Demetre* that have required juries to find "severe or serious" distress to award noneconomic damages alongside other liability. *Id.* at 6, 23.[2]

Second, V-Soft argues Nekkanti's testimony was insufficient to support the award. But Nekkanti's detailed testimony about his mental state constitutes "clear and satisfactory" proof on which the jury could've reasonably rested its verdict. *Glass*, 996 S.W.2d at 454. Nekkanti testified he was "in state of shock" when he found out that he was terminated from the project. Tr., Vol. I at 45. For the first "10 or 15 days," he "was barely getting any sleep." Tr., Vol. II at 70 (cleaned up). Although his sleeplessness improved, he had difficulty sleeping when recalling the events because being thought of as a fraud "still kills me, burns me constantly." *Id.* at 71. He also experienced "pretty severe" headaches as a result of not sleeping and "constant stress" during those first two weeks. *Id.* He became "frustrated" when his parents, who were in India, would call; he "was not in a mood to talk to them" and felt the same frustration trying to explain to his in-laws what happened to his job. *Id.* at 72. Even after Nekkanti began work on another project, he testified that the termination from that lost Cognizant project was "constantly … running in my mind." Tr., Vol. I at 75; *see also id.* at 83 ("This is like a constant pain that … the termination left."). He remained nervous that others have the "impression that … he was terminated for … some fraudulent activity" because he "can't call each and everybody" to clear up the story. Tr., Vol. II at 76.

The jury could reasonably infer from Nekkanti's testimony that he suffered emotional distress resulting from V-Soft's employee's actions. In *Demetre*, the Kentucky Supreme Court held that Demetre's testimony about the impact of "daily stress" over more than three years was sufficient evidence to establish emotional-distress damages of $925,000. 527 S.W.3d at 15, 40. And this award is no greater than jury awards in similar cases. *See, e.g., Asbury Univ. v. Powell*, 486 S.W.3d 246, 264 (Ky. 2016) ($300,000 for "humiliation, embarrassment, and emotional distress" after termination over "apparently untrue allegations"). Nekkanti testified to severe headaches and sleeplessness immediately following the termination and continued stress and sleep difficulties following that time period, including at his new job and

---

[2] Nekkanti also argues that his testimony would qualify as "significant" under the heightened standard V-Soft endorses. Response (DN 84) at 4. Because Kentucky caselaw doesn't request plaintiffs in Nekkanti's position to meet that heightened standard, the Court needn't reach its application to the evidentiary record.

4

whenever he had to think about what happened. So adequate proof supports the jury's award of $75,000.

## II. Remittitur

A party may move to "alter or amend a judgment … no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). The Sixth Circuit, reviewing damages found in a diversity case, has cautioned that a jury award "must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Advance Sign Grp., LLC v. Optec Displays, Inc.*, 722 F.3d 778, 787 (6th Cir. 2013) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000)). To determine whether the award is supportable, excessive, or mistaken, the reviewing court views the evidence "in the light most favorable to the awardee." *Gregory*, 220 F.3d at 443. And for claims arising under state law, "the law of the state's highest court" supplies the legal frame in which to view for the evidentiary record. *Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 5 (6th Cir. 2021) (quoting *Peterson v. Johnson*, 714 F.3d 905, 913 (6th Cir. 2013)). To determine whether the jury's damages award is consistent with the law, therefore, Kentucky law supplies the standards. *See Medlin v. Clyde Sparks Wrecker Serv., Inc.*, 59 F. App'x 770, 777 (6th Cir. 2003) (applying state law to determine if punitive damages were supported or excessive). "If the verdict bears *any* relationship to the evidence of the loss suffered," the Kentucky Supreme Court instructs trial courts "not to disturb the jury's assessment of damages." *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 120 (Ky. 2012) (quotation omitted). This Court's role is to assess the jury's damages finding under this deferential standard.

V-Soft argues the award was excessive and resulted from inappropriate argumentation from Nekkanti's counsel about "justice." JMOL Motion at 8. No evidence of lost wages, in V-Soft's view, supported the award of $11,635 for the 41 days Nekkanti was between projects. But the testimony that V-Soft cites supports some lost wages:

> Q. And Global Information Technology was your full-time employer, at the time?
>
> A. Yes. At the time that I was working for Anthem.
>
> [….]
>
> Q. [I]t continued paying you even if a project ended; is that correct?
>
> A. Yeah, but not for long. Depends, like, how long I would be on bench.
>
> Q. All right. And you were paid whether you were working or not?
>
> A. I would be paid part of it.

Tr., Vol. I at 99. Contrary to V-Soft's assertion, Nekkanti didn't testify that he was paid during the entirety of the time he was between projects; he testified that he would be paid partially. *Id.* And Nekkanti submitted pay stubs from the preceding and following months from which the jury could determine his pay. Tr., Vol. II at 27; Summary Exhibit 1. During this time, his monthly pay varied from about $4,400 to $12,000. *See* Summary Exhibit 1. The jury's award of $11,635 was within a reasonable range based on this evidence. In light of that, the Court cannot conclude the amount is unsupported, excessive, or mistaken.

So too for the emotional-distress damages. In two retaliatory-discharge cases, the Kentucky Supreme Court affirmed jury awards of $300,000 for emotional distress. *See Banker*, 466 S.W.3d at 463 ("Banker testified that she suffered significant stress with accompanying loss of appetite, weight loss, depression, and sleep disturbance," which was corroborated by her mother's testimony); *Powell*, 486 S.W.3d at 264 ($300,000 award for "humiliation, embarrassment, and emotional distress" wasn't excessive considering "untrue allegations" about plaintiff's personal life and that she was an alumna of the university that employed her). V-Soft, notably, doesn't cite any caselaw with lower awards for the Court to compare. The jury heard Nekkanti's testimony that he had lost a desirable work assignment, couldn't sleep for the first 10 to 15 days following the news, felt humiliated, and experienced severe headaches during that time. Tr., Vol. I at 75, 82–83; Tr., Vol. II at 69–72. Nekkanti testified to continuing stress whenever his previous work experience came up in conversation, because he was scared others would think he was a fraud. Tr., Vol. II at 75–76. Based on that testimony and jury awards in similar cases, the Court cannot conclude that $75,000 was clearly excessive. So the Court denies the alternative request to remit damages.

### III. New Trial

Federal Rule of Civil Procedure 59(a) allows trial courts to grant a new trial on "all or some of the issues" following a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Sixth Circuit interprets the Rule to require a "seriously erroneous result," such as when (1) the verdict is "against the weight of the evidence;" (2) damages are excessive; or (3) some unfairness tainted the proceedings. *Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996). When a new-trial motion challenges the weight of the evidence, the Court must "accept the jury's verdict 'if it is one which reasonably could have been reached.'" *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

V-Soft contends the lost-wages award is against the weight of the evidence and the emotional-distress award is contrary to law and excessive. JMOL Motion at 10. The Court has explained above why the jury awards are supported by the evidence, not excessive, and in accordance with Kentucky law. So the Court denies this alternative request as well.

## ORDER

The Court denies V-Soft's motion for judgment as a matter of law, remittitur, and alternatively for a new trial (DN 81).

Benjamin Beaton, District Judge
United States District Court

May 12, 2022